UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: C.F. Graphics, Inc., <br><br> Debtor(s). | Bankruptcy No. 06 B 00459 <br> Adversary No. 08 A 1011 <br> Chapter 7 <br> Judge Manuel Barbosa |
| Roy Safanda, as Chapter 7 Trustee For the bankruptcy estate of C.F. Graphics, Inc., <br><br>                      Plaintiff(s), <br> v. <br> Theresa Foca, Charles M. Foca, Jr., and Jonathan Foca, <br><br>                      Defendant(s). | |

## MEMORANDUM OPINION

This matter comes before the Court on the motion to dismiss as to defendants Charles M. Foca, Jr. and Jonathan Foca filed by defendants Charles M. Foca, Jr. and Jonathan Foca, pursuant to Fed. R. Bankr. P. 7012, on February 12, 2009. For the reasons set forth herein, the Court denies defendants' motion to dismiss.

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide these matters pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. They are core proceedings pursuant to 28 U.S.C. § 157(b)(2).

## FACTS AND BACKGROUND

The following facts and procedural history are taken from plaintiff Roy Safanda's ("Trustee"), as Chapter 7 Trustee for the bankruptcy estate of debtor C.F. Graphics, Inc. ("Debtor"), adversary complaint, opposition to motion to dismiss, and sur-reply, as well as the defendants', Charles M. Foca, Jr. and Jonathan Foca, motion to dismiss and reply to Trustee's

opposition to motion to dismiss, and from all public records and proceedings to which the parties refer.

Charles M. Foca, Sr. ("Foca Sr.") was originally employed as a pre-pressman in 2000 by Diamond Web Printing, LLC ("Diamond Web"), a printing company. Gregg Herlin was sole shareholder, director and officer of Diamond Web. On August 16, 2002, Foca Sr., as sole shareholder, director and officer, formed and incorporated debtor C.F. Graphics, a print broker engaged in the printing business. Debtor relied exclusively on Diamond Web to provide its printing supply materials, personnel and machinery to produce printing services for Debtor's resale to third party customers. Debtor acted as a printing broker to find printing jobs, which Foca Sr. would have performed by Diamond Web or GH Printing, another company owned by Herlin.

On August 26, 2003, Foca Sr. and his wife, Theresa Foca, purchased real property located at 608 Pine Street, Sugar Grove, Illinois (the "Pine Street Property"). (Trustee's Compl., 4).

According to Foca Sr., Foca Sr. and Herlin suffered a "falling out" in mid-December 2003 and Debtor failed to pay certain invoices. At that time, Debtor owed approximately $200,093.82 to Diamond Web and $1900.00 to GH Printing. In response, Diamond Web and GH Printing Co., Inc. ("GH Printing") filed an action in Illinois state court, case number 2004-L-000678, against Foca Sr., Debtor and Michael Pahl to seek payment of these outstanding invoices. In an order dated October 19, 2004, the Illinois state court granted default judgment in favor of GH Printing against Debtor for $1900 and in favor of Diamond Web against Debtor for $212,298.06. (Trustee's Opp'n to Defs.' Mot. to Dismiss, Ex. A, 1).

Within two months of the default judgment against Debtor, on December 13, 2004, Foca Sr. and his wife Theresa Foca transferred their interest in the Pine Street Property via a quit claim

deed to their two sons, defendants Charles M. Foca, Jr. and Jonathan Foca (the "Sons"), and Theresa Foca for $10.00 in consideration. (Trustee's Opp'n to Defs.' Mot. to Dismiss, Ex. B, 2). Foca Sr., however, testified that he received no value for this transfer. (Trustee's Opp'n to Defs.' Mot. to Dismiss, Ex. C, 2; Dep. of Foca Sr., dated Aug. 24, 2007, 123). Trustee asserts that this transfer was all or substantially all of Foca Sr.'s assets and, thus, made him insolvent. (Trustee's Opp'n to Defs.' Mot. to Dismiss, 6).

Within six months, on June 2, 2005, Theresa Foca and the Sons sold the Pine Street Property and received $132,594.75 at the sale closing. (Trustee's Opp'n to Defs.' Mot. to Dismiss, Ex. D, 3). These funds were used on August 24, 2005 as a down payment on real property located at 0N462 Dooley Drive, Geneva, Illinois (the "Dooley Property"), which was titled in Theresa Foca's name only. (Trustee's Opp'n to Defs.' Mot. to Dismiss, 2).

On January 19, 2006, an involuntary petition for Chapter 7 relief was filed by creditors of Debtor, pursuant to 11 U.S.C. § 303. In an order dated May 4, 2006, the Court granted relief under Chapter 7 of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1532 (2009). The Trustee was appointed on May 11, 2006. Pursuant to 11 U.S.C. § 704(a)(4), the Trustee investigated the financial affairs of Debtor, including allegations of misconduct and actual and potential fraud by Debtor's officers and directors, including allegations of misconduct and actual and potential fraud by Foca Sr. The investigation revealed several transfers of Debtor's property that are subject to avoidance and recovery under Chapter 5 of the Bankruptcy Code and the Illinois Uniform Fraudulent Transfer Act ("UFTA").

On April 18, 2007, the Trustee filed adversary complaint number 07-A-0270 against Foca Sr., his wife, Theresa Foca, and Michael Pahl to recover funds fraudulently transferred from Debtor's estate to Foca, Sr., Theresa Foca, and Michael Pahl. In an order dated October 23, 2008, the Court granted the Trustee's motion to compromise and settle with Theresa Foca to

resolve Trustee's claims for funds transferred from Debtor to Theresa Foca, but reserved the Trustee's right to proceed against Theresa Foca for any transfers made from Foca Sr. to his wife Theresa Foca following Foca Sr.'s transfer of Debtor's assets to himself, including the Pine Street Property. On August 15, 2008, Trustee filed a motion for summary judgment against Foca Sr., and, in an order dated November 6, 2008, the Court granted partial summary judgment against Foca Sr. as to $209,216.70 in funds transferred fraudulently from Debtor to Foca Sr. between December 2003 and February 2004.

On December 12, 2008, Trustee filed adversary complaint number 08-A-01011 against Foca Sr.'s wife, defendant Theresa Foca, and the Sons to avoid certain pre-petition transfers of various property, including the Pine Street Property, from Foca Sr. to, or on behalf of, Theresa Foca and the Sons following Foca Sr.'s fraudulent transfer of $209,216.70 in funds from Debtor to himself between December 2003 and February 2004. In Counts I-IV, Trustee sought avoidance of Foca Sr.'s transfers under 740 ILL. COMP. STAT 160/5(a)(1), 740 ILL. COMP. STAT 160/5(a)(2), 740 ILL. COMP. STAT 160/6(a), and 740 ILL. COMP. STAT 160/6(b),[1] respectively. In paragraph 24 of Trustee's complaint, Trustee asserts that Foca Sr. and Theresa Foca quit claimed their interest in the Pine Street Property to Theresa Foca and the Sons for only $10,000.[2] (Trustee's Compl., 6). In paragraph 26 of Trustee's complaint, Trustee asserts that Theresa Foca and the Sons sold the Pine Street Property on June 2, 2005 for $132,594.75. (Trustee's Compl., 6). In paragraph 27 of the complaint, Trustee states that these funds were used on August 24, 2005 as a down payment on the Dooley Property, which was titled in Theresa Foca's name only, rather than Theresa Foca and the Sons. (Trustee's Compl., 6).

On February 12, 2009, the Sons filed a motion to dismiss themselves as defendants,

---

[1] Trustee's complaint was not filed within the statute of limitations set forth in 740 ILL. COMP. STAT. 160/6(b) and this cause of action has been previously dismissed.
[2] It should be noted that the property was quit claimed for $10, not $10,000 as the complaint alleges. (Trustee's Opp'n to Defs.' Mot. to Dismiss, Ex. B, 2).

pursuant to Fed. R. Bankr. P. 7012, from adversary number 08-A-01011. Foca Sr. and Theresa Foca quit claimed the Pine Street Property to Theresa Foca and the Sons, but, when the Pine Street Property was sold on June 2, 2005, the proceeds of $132,594.75 were applied as a down payment on the Dooley Property, which Theresa Foca purchased in her name only on August 24, 2005. Thus, the Sons assert that the conveyance to them does not constitute a fraudulent transfer of property under UFTA and, therefore, they should be dismissed as defendants from the adversary complaint.

On February 27, 2009, the Trustee filed an opposition to the Sons' motion to dismiss themselves as defendants. Trustee asserts that there is sufficient evidence to prove that the transfer of the Pine Street Property to the Sons was fraud in law, pursuant to 740 ILL. COMP. STAT. 160/5(a)(2), because Foca Sr. transferred the property to his sons and wife, as immediate family members or insiders, for less than adequate compensation (quit claimed for $10, yet the property was re-sold for $132,000 within months) that made him insolvent and, thus, unable to pay his debts such as the Court's November 6, 2008 fraudulent conveyance judgment. In addition, Trustee argues that there is sufficient evidence to prove that the transfer of the Pine Street Property to the Sons was fraud in fact, pursuant to 740 ILL. COMP. STAT. 160/5(a)(1), because the Pine Street Property was transferred for less than adequate consideration and, after the transfer, Foca Sr. was unable to meet his obligations, including the fraudulent conveyance judgment. Trustee further asserts that the proper inquiry is what consideration was paid by the Sons when the Pine Street Property was quit claimed, rather than how much they received from a subsequent sale.

On March 13, 2009, the Sons filed a reply to the Trustee's opposition to the Son's motion to dismiss. The Sons allege that they received no consideration in the June 2, 2005 transfer of the Pine Street Property to a bona fide purchaser, and, thus, the initial conveyance of the property

from Foca Sr. to the Sons had no value. Accordingly, the Sons assert that if no value was acquired, then there cannot be a conveyance made for inadequate considerations which is a necessary element to prove that a conveyance is fraudulent.

On March 17, 2009, Trustee filed a sur-reply on the Sons' motion to dismiss. Trustee cites paragraph 26 of its complaint to assert that Theresa Foca <u>and the Sons</u> received consideration ($132,594.75) in the June 2, 2005 transfer of the Pine Street Property to a bona fide purchaser. Trustee further asserts that he can prove that the transfers of the Pine Street Property to the Sons and Theresa Foca were fraud in law or fraud in fact, pursuant to 740 ILL. COMP. STAT. 160/5(a).

## DISCUSSION

A motion to dismiss under <u>Fed. R. Civ. P.</u> 12(b)(6), made applicable by <u>Fed. R. Bankr. P.</u> 7012, tests the sufficiency of the complaint, rather than the merits of the case. <u>In re Irmen</u>, 379 B.R. 299, 307 (Bankr. N.D. Ill. 2007) (citing <u>Gibson v. City of Chicago</u>, 910 F.2d 1510, 1520 (7th Cir. 1990)). Under Rule 12(b)(6), a court must take as true all facts alleged in the complaint and construe all reasonable inferences in favor of the plaintiff. <u>See</u> <u>Murphy v. Walker</u>, 51 F.3d 714, 717 (7th Cir. 1995); <u>In re Irmen</u>, 379 B.R. at 307.

The Seventh Circuit addressed the Supreme Court's <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) opinion on <u>Fed. R. Civ. P.</u> 12(b)(6) as establishing "two easy-to-clear hurdles" for a complaint in federal court: First, pursuant to <u>Fed. R. Civ. P.</u> 8(a)(2) made applicable by <u>Fed. R. Bankr. P.</u> 7008, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests. <u>See</u> <u>Tamayo v. Blagojevich</u>, 526 F.3d 1074, 1084 (7th Cir. 2008) (citing <u>Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.</u>, 496 F.3d 773, 776 (7th Cir. 2007)); <u>In re Irmen</u>, 379 B.R. at 307-08. Second, its allegations must plausibly suggest

that the plaintiff has a right to relief, raising that possibility above a "speculative level"; if they do not, the plaintiff pleads itself out of court. Tamayo, 526 F.3d at 1084 (citing Concentra Health Servs., Inc., 496 F.3d at 776).

In each context, courts must determine what allegations are necessary to show that recovery is "plausible." In re Jacobs, 403 B.R. 565, 573 (Bankr. N.D. Ill. 2009) (quoting Tamayo, 526 F.3d at 1083). Where fraud is alleged, a more rigorous pleading standard comes into play. Ibid. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Ibid. (quoting Fed. R. Civ. P. 9(b). Thus, a plaintiff shall state the "'who, what, when, and where' of the alleged fraud." Ibid. (quoting Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992)).

Trustee asserts that the transfer of the Pine Street Property from Foca Sr. and Theresa Foca to Theresa Foca and the Sons via quit claim was fraudulent, pursuant to 740 ILL. COMP. STAT. 160/5(a)(1), (2) of the Illinois Uniform Fraudulent Transfer Act ("UFTA"). Sections 160/5(a)(1), (2) of the UFTA provide:

> 5. (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:
> (1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or
> (2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
> (B) intended to incur, or believed or reasonably should have believed that he would incur, debts beyond his ability to pay as they became due.

740 ILL. COMP. STAT. 160/5(a)(1), (2). UFTA recognizes two types of fraud, fraud in fact and fraud in law. Zimmerman v. Paulsen, 524 F. Supp. 2d 1077, 1080 (N.D. Ill. 2007); S.A.M. Elecs., Inc. v. Osaraprasop, 39 F. Supp. 2d 1074, 1090 (N.D. Ill. 1999); In re

Zeigler, 320 B.R. 362, 372 (Bankr. N.D. Ill. 2005); In re Secs. Investor Prot. Corp. v. R.D. Kushnir & Co., 274 B.R. 768, 780 (Bankr. N.D. Ill. 2002).

Actual fraud or fraud-in-fact results when debtor transfers property with the intent to hinder, delay, or defraud his creditors, whereas constructive fraud or fraud-in-law occurs when (1) a voluntary gift is made, (2) there is an existing or contemplated indebtedness against debtor, and (3) debtor has failed to retain sufficient property to pay the indebtedness. Wachovia Secs., LLC v. Neuhauser, 528 F. Supp. 2d 834, 858 (N.D. Ill. 2007); In re Roti, 271 B.R. 281 (Bankr. N.D. Ill. 2002), aff'd sub nom. Nelmark v. Helms, No. 02 C 0925, 2003 WL 1089363 (N.D. Ill. Mar. 11, 2003). The distinction between fraud in fact and fraud in law is derived from whether or not there is any consideration for the conveyance at issue. In re Ziegler, 320 B.R. at 374.

To determine fraud in fact, the UFTA directs courts to consider eleven factors or badges of fraud, including adequacy of consideration, which, if in sufficient number, will give rise to an inference or presumption of fraud. In re Spatz, 222 B.R. 157, 168 (N.D. Ill. 1998); In re Knippen, 355 B.R. 710 (Bankr. N.D. Ill. 2006) (citing 740 ILL. COMP. STAT. 160/5(b)), aff'd, No. 07 C 1697, 2007 WL 1498906 (N.D. Ill. May 18, 2007); In re Mussa, 215 B.R. 158 (Bankr. N.D. Ill. 1997) (listing eleven badges of fraud under 740 ILL. COMP. STAT. 160/5(b)). Party seeking to avoid transfer under "fraud in fact" provision of UFTA bears burden of proving all of the elements of actual fraud by clear and convincing evidence. Wachovia Secs., LLC, 528 F. Supp. 2d at 858; In re Phillips, 379 B.R. 765, 777 (Bankr. N.D. Ill. 2007). Once movant has established fraudulent intent under UFTA, only defense to "fraud in fact" is set forth in UFTA, 740 ILL. COMP. STAT. 160/9(a), providing that transfer is not voidable against person who took in good faith and for reasonably equivalent value or against any subsequent transferee or oblige. In re Spatz, 222 B.R. at 168 (citing 740 ILL. COMP. STAT. 160/9(a)).

Establishing constructive fraud, or fraud in law, under UFTA, does not require proof of actual intent to defraud, rather, transfers made for less than reasonably equivalent value, leaving debtor unable to meet its obligations, are deemed or presumed to be fraudulent. Wachovia Secs., LLC, 528 F. Supp. 2d at 859. Movant has burden of proving fraud in law by a preponderance of evidence, not by clear and convincing evidence. Ibid.; In re Knippen, 355 B.R. at 725; In re Phillips, 379 B.R. at 778.

Where Chapter 7 debtors' transfers of their home to their daughter and son-in-law were constructively fraudulent under UFTA, and hence avoidable under the Bankruptcy Code, trustee could recover the real property or its value from daughter and son-in-law as initial transferees, for the benefit of debtors' estate, less the cost of improvements made by daughter and son-in-law. In re Zeigler, 320 B.R. at 379-80. Chapter 7 debtor's gratuitous prepetition transfers, at time when debtor was insolvent and when large money judgment had been entered against him, of funds to his daughters to hold in their bank accounts on his behalf, and to pay other parties as he directed, were avoidable by trustee, in exercise of strong-arm powers, under both the "fraud in fact" and the "fraud in law" provisions of UFTA. In re Roti, 271 B.R. at 303-04. If a person largely indebted makes a voluntary conveyance and shortly after becomes insolvent, such conveyance is fraudulent. Hauk v. Van Ingen, 63 N.E. 705, 707 (Ill. 1902); Murrie v. Carter, 222 Ill. App. 447 (Ill. App. Ct. 1922).

Sections 160/9(b), (c) of the UFTA provide:

(b) Except as otherwise provided in this Section, to the extent a transfer is voidable in an action by a creditor under paragraph (1) of subsection (a) of Section 8, the creditor may recover judgment for the value of the asset transferred, as adjusted under subsection (c), or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
    (1) the first transferee of the asset or the person for whose benefit the transfer was made; or
    (2) any subsequent transferee other than a good-faith transferee who took

for value or from any subsequent transferee.
(c) If the judgment under subsection (b) is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, subject to adjustment as the equities may require.

740 ILL. COMP. STAT. 160/9(b), (c). To constitute a bona fide purchaser from a fraudulent transferor, transferee must have purchased property for a valuable consideration, without notice of the fraud, and he must be innocent of any purpose to further the fraud, even to protect himself. Alan Drey Co., In. v. Generation, Inc., 317 N.E.2d 673, 680 (Ill. App. Ct. 1974); see also In re Hennings Feed & Crop Care, Inc., 365 B.R. 868, 874 (Bankr. C.D. Ill. 2007). In strong-arm proceeding to avoid prepetition transfer that Chapter 7 debtor effected pursuant to property settlement agreement with his estranged spouse, whereby debtor gave up his one-half interest in residential property that had fair market value roughly $57,000 in excess of encumbrances against it in exchange for roughly $8500 in personal property, trustee, upon demonstrating that transfer was avoidable by debtor's unsecured creditors under UFTA, was entitled to monetary judgment against both debtor's ex-wife, as initial transferee, and relatives to whom she later transferred property, in amount equal to value of debtor's one-half interest in real property less the value of personal property that he received in return. In re Knippen, 355 B.R. at 726.

Taking as true all facts alleged in Trustee's complaint and construing all reasonable inferences in favor of Trustee, Murphy, 51 F.3d at 717, Trustee's complaint describes the fraudulent conveyance claim in sufficient detail to give the Sons fair notice of what the claim is and the grounds upon which it rests, Tamayo, 526 F.3d at 1084; Concentra Health Servs., Inc., 496 F.3d at 776; In re Irmen, 379 B.R. at 307-08, and Trustee's allegations plausibly suggest that the Trustee has a right to relief, raising that possibility above a "speculative level." Tamayo, 526 F.3d at 1084. Since fraud is alleged, a more rigorous pleading standard comes into play. In re Jacobs, 403 B.R. at 573; Tamayo, 526 F.3d at 1083. Trustee "must state with particularity the circumstances constituting fraud," In re Jacobs, 403 B.R. at 573 (quoting Fed. R. Civ. P. 9(b),

including the "'who, what, when, and where' of the alleged fraud." Ibid. (quoting Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d at 923).

In this case, Trustee asserts that the transfer of the Pine Street Property from Foca Sr. and Theresa Foca to Theresa Foca and the Sons via quit claim was fraudulent, pursuant to 740 ILL. COMP. STAT. 160/5(a)(1), (2) of the UFTA. Fraud in law, pursuant to 740 ILL. COMP. STAT. 160/5(a)(2), is plausible because Foca Sr. transferred the Pine Street Property to the Sons for less than adequate consideration which made him insolvent and unable to pay his debts, including the Court's November 6, 2008 fraudulent conveyance judgment. Wachovia Secs., LLC, 528 F. Supp. 2d at 859-60; In re Roti, 271 B.R. at 303-04. Fraud in fact, pursuant to 740 ILL. COMP. STAT. 160/5(a)(1), is plausible because the Pine Street Property was transferred to the Sons for less than adequate compensation and, after the transfer, Hauk, 63 N.E. 705; Murrie, 222 Ill. App. 447, Foca Sr. was unable to meet his obligations, including the Court's November 6, 2008 fraudulent conveyance judgment. Wachovia Secs., LLC, 528 F. Supp. 2d at 858-59; In re Roti, 271 B.R. at 303-04; In re Spatz, 222 B.R. at 168; In re Knippen, 355 B.R. 710; In re Mussa, 215 B.R. 158. The Sons have no defense to fraud in fact under 740 ILL. COMP. STAT. 160/9(a) because they did not take the property in good faith and for reasonably equivalent value. In re Spatz, 222 B.R. at 168.

The proper inquiry is what consideration was paid by the Sons, as first transferees, when the Pine Street Property was quit claimed, rather than how much they received from a subsequent sale. In paragraph 24 of Trustee's complaint, Trustee asserts that Foca Sr. and Theresa Foca quit claimed their interest in the Pine Street Property to Theresa Foca and the Sons, as first transferees, for $10,000. 740 ILL. COMP. STAT. 160/9(b)(1); In re Knippen, 355 B.R. 710. In reality, the Pine Street Property transfer was for only $10 in consideration. Subsequently, in paragraph 26 of Trustee's complaint, Trustee claims that Theresa Foca and the Sons received

substantially more consideration, $132,594.75, in the June 2, 2005 transfer of the Pine Street Property to a bona fide purchaser. Despite the Sons' contentions, for the purposes of this motion to dismiss the Sons as defendants, it is immaterial that Theresa Foca subsequently used the proceeds from this sale as a down payment on the Dooley Property, which was titled in Theresa Foca's name only. Moreover, since the Sons, as first transferees, may not be dismissed as defendants, there are other avenues that the Sons may pursue. In the meantime, Trustee may plausibly assert that Foca Sr.'s transfer of his home to the Sons was constructively fraudulent under UFTA, and avoidable under the Bankruptcy Code, to potentially recover the value from the Sons as initial transferees, for the benefit of Debtor's estate. In re Zeigler, 320 B.R. at 379-80. The Sons' motion to dismiss is denied.

**CONCLUSION**

For the foregoing reasons, the Court denies the defendants Charles M. Foca, Jr.'s and Jonathan Foca's motion to dismiss.

THEREFORE, IT IS ORDERED that the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: May 28, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge